**UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**

*Caption in Compliance with D.N.J. LBR 9004-1(b)*
BIELLI & KLAUDER, LLC
Robert J. Lohr II, Esquire (010151995)
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 642-8271
Facsimile: (215) 754-4177
rlohr@bk-legal.com
*Counsel to the Debtor-in-Possession*

In re:

PRANAV DESAI,

                                    Debtor.

Case No. 20-23494-CMG

Chapter 11

Judge:  Christine M. Gravelle

### DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DESCRIBING THE CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE DEBTOR PRANAV DESAI

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF REORGANIZATION. THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.**

Dated: July 23, 2021                          By:     /s/  Pranav Desai

## <u>TABLE OF CONTENTS</u>

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| | A. | Purpose of This Document | 2 |
| | B. | Confirmation Procedures | 3 |
| | | 1. Time and Place of the Confirmation Hearing | 4 |
| | | 2. Deadline For Voting For or Against the Plan | 4 |
| | | 3. Deadline For Objecting to the Confirmation of the Plan | 4 |
| | | 4. Identity of Person to Contact for More Information Regarding the Plan | 4 |
| | C. | Disclaimer | 5 |
| | | | |
| II. | BACKGROUND | | 5 |
| | A. | Description and History of the Debtor's Business | 5 |
| | B. | Principals/Affiliates of Debtor's Business | 5 |
| | C. | Management of the Debtor Before the Bankruptcy | 6 |
| | D. | Events Leading to Chapter 11 Filing | 6 |
| | E. | Significant Events During the Bankruptcy | 7 |
| | | 1. Bankruptcy Proceedings | 7 |
| | | 2. Other Legal Proceedings | 7 |
| | | 3. Actual and Projected Recovery of Preferential or Fraudulent Transfers | 7 |
| | | 4. Procedures Implemented to Resolve Financial Problems | 8 |
| | | 5. Current and Historical Financial Conditions | 8 |
| | | | |
| III. | SUMMARY OF THE PLAN OF REORGANIZATION | | 8 |
| | A. | What Creditors and Interest Holders Will Receive Under the Proposed Plan | 8 |
| | B. | Unclassified Claims | 8 |
| | | 1. Administrative Expenses and Fees | 9 |
| | | 2. Priority Tax Claims | 10 |
| | C. | Classified Claims and Interests | 11 |
| | | 1. Classes of Secured Claims | 11 |
| | | 2. Classes of Priority Unsecured Claims | 12 |
| | | 3. Class of General Unsecured Claims | 13 |
| | | 4. Class(es) of Interest Holders | 13 |
| | D. | Means of Effectuating the Plan | 14 |
| | | 1. New Value Contribution | 14 |
| | | 2. Net Realizable Equity | 15 |
| | | 3. Completion Amount. | 16 |
| | | 4. Funding for the Plan | 17 |
| | | 5. Illustration of Application of Funding Sources | 18 |
| | | 6. Post-confirmation Management | 18 |
| | | 7. Disbursing Agent | 18 |
| | E. | Other Provisions of the Plan | 18 |

i

1. Executory Contracts and Unexpired Leases ........................ 19
2. Changes in Rates Subject to Regulatory Commission
   Approval ................................................................. 19
3. Retention of Jurisdiction .................................................. 19
4. Procedures for Resolving Contested Claims ...................... 19
5. Effective Date ................................................................ 19
6. Modification .................................................................. 20
F. Tax Consequences of Plan ................................................ 20
G. Risk Factors .................................................................... 20

IV. CONFIRMATION REQUIREMENTS AND PROCEDURES ..................... 21
A. Who May Vote or Object .................................................... 21
1. Who May Object to Confirmation of the Plan ............. 21
2. Who May Vote to Accept/Reject the Plan ................... 21
   a. What Is an Allowed Claim/Interest ....................... 22
   b. What Is an Impaired Claim/Interest ...................... 22
3. Who Is Not Entitled to Vote ................................... 23
4. Who Can Vote in More Than One Class ..................... 23
5. Votes Necessary to Confirm the Plan ........................ 23
6. Votes Necessary for a Class to Accept the Plan ........... 24
7. Treatment of Nonaccepting Classes .......................... 24
8. Request for Confirmation Despite Nonacceptance by
   Impaired Class(es) .............................................. 24
B. Liquidation Analysis ......................................................... 24
C. Feasibility ....................................................................... 27

V. EFFECT OF CONFIRMATION OF PLAN .................................... 27
A. Discharge ........................................................................ 28
B. Revesting of Property in the Debtors .................................. 28
C. Modification of Plan ......................................................... 28
D. Post-Confirmation Conversion/Dismissal ............................ 29

# I.

# INTRODUCTION

Pranav Desai is the debtor in this Chapter 11 bankruptcy case (the "Debtor"). On December 11, 2020, the Debtor filed a petition for relief under Chapter 11 of the U.S. Bankruptcy Code (the "Code"), 11 U.S.C. § 101, *et seq*., in the U.S. Bankruptcy Court for the District of New Jersey under petition No. 20-23494-CMG (the "Bankruptcy"). The Code allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Debtor as Debtor-in-Possession is the party proposing the Plan sent to you in the same envelope as this document. **THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN WHICH IS ATTACHED HERETO AS EXHIBIT A**.

This is a reorganization plan under Section 1123 of the Code. In other words, the Proponent seeks to accomplish payments under the Plan by the contribution of the Debtor's Disposable Income as is necessary to fund the Plan.  The Plan contemplates current payments to certain parties, the payment of certain Secured Claims, and deferred payments to other parties.

A.    **Purpose of This Document**

This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1)    **WHO CAN VOTE OR OBJECT,**

1

(2)     **THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION,**

(3)     **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

(4)     **WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN,**

(5)     **THE EFFECT OF CONFIRMATION, AND**

(6)     **THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Code Section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in Code Section 1125(a) as "information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor to make an informed judgment about accepting or rejecting the Plan. The Bankruptcy Court ("Court") has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Code Section 1124.

This Disclosure Statement is provided to each creditor whose claim has been scheduled by the Debtor, or who has filed a proof of claim against the Debtor and to each interest holder of

2

record as of the date of approval of this Disclosure Statement. Under the Bankruptcy Code, your

acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure

Statement prior to or concurrently with such solicitation.

**B.      Confirmation Procedures**

<u>Person Potentially Eligible to Vote on the Plan</u>

In determining acceptance of the Plan, votes will only be counted if submitted by a

creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and

unliquidated, or who, prior to the hearing on confirmation of the Plan, has filed with the Court a

proof of claim which is not subject to a pending objection, or has not been disallowed or

suspended prior to computation of the votes on the Plan. The Ballot Form that you received does

not constitute a proof of claim. If you are uncertain whether your claim has been correctly

scheduled, you should check the Debtor's Schedules, which are on file at the office of the Clerk

of the Bankruptcy Court located at: United States Bankruptcy Court, U.S. Court House, 402 East

State Street, Trenton, NJ 08608.  The Clerk of the Bankruptcy Court will not provide this

information by telephone.

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT

YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE

PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL

CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.      Time and Place of the Confirmation Hearing**

The hearing at which the Court will determine whether to confirm the Plan will take place on _____, at _____ a.m./p.m., in Courtroom No. 3, 402 East State Street, Trenton, NJ 08608.

**2.      Deadline for Voting For, or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to:

Robert J. Lohr II, Esquire

BIELLI & KLAUDER, LLC

1905 Spruce Street

Philadelphia, PA 19103

Your ballot must be received by 5:00 PM on _____ for your ballot to be counted.  Ballots received after the deadline will not be counted.

**3.      Deadline For Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon Counsel to the Debtors at the Address above, by_____.

**4.      Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact counsel to the Debtor: Robert J. Lohr II, Esquire, BIELLI & KLAUDER, LLC, 1905 Spruce Street, Philadelphia, PA 19103; Tel: (610) 701-0222; Email: rlohr@bk-legal.com.

**C.      Disclaimer**

The financial data relied upon in formulating the Plan is based on estimates and actual historic information, as well as the Debtor's Monthly Operating Reports ("MOR's"). The information contained in this Disclosure Statement is provided by the Debtor-in-Possession as Plan Proponent. The Plan Proponent represents that everything stated in the Disclosure Statement is true to the best of the Proponent's knowledge.

**PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.**

**II.**

**BACKGROUND**

**A.    Description and History of the Debtor's Business**

The Debtor is an individual.  The Debtor is a self-employed entrepreneur, and investor in restaurants and restaurant related entities.

**B.    Principals/Affiliates of Debtors**

The Debtor has ownership interests in: Frodoe LLC; DMP FreshMex, LLC; Turtle Time JRP 1, LLC; Turtle Time JRP 2, LLC; Integrity Group, LLC; and TIG DE LLC, and holds two franchise agreements to operate two restaurants under The Green Turtle franchise and one restaurant under the Pancheros franchise.

Frodoe, LLC and Integrity Group, LLC are involved in restaurant management.  DMP FreshMex, LLC is a grocery story.  Turtle Time JRP 1, LLC and Turtle Time JRP 2, LLC own restaurants, the two restaurants are managed by TIG DE LLC.

5

**C.      Management of the Debtor Before and During the Bankruptcy**

The Debtor operated his own household with his spouse both pre-petition and post-petition.  The Debtor participated in the operation and management of Frodoe LLC; DMP FreshMex, LLC; Turtle Time JRP 1, LLC; Turtle Time JRP 2, LLC; Integrity Group, LLC; and TIG DE LLC both pre-Petition and post-Petition.

**D.      Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that led to the filing of this Chapter 11:

With the start of the COVID-19 pandemic in March of 2020, grocery stores and restaurant businesses were and continue to be negatively affected by the numerous and routinely changing restrictions on the operations and limitation of capacity.  Many restaurants were required to close their locations or alter their business models to accommodate food service for take-out - either pickup and/or delivery.  There was a drastic decline in patronage due to the shut down during the early months of the pandemic that continued through the end of 2020.  With the shutdowns and drastic reductions in workforce, there were major disruptions in the supply chain affecting both grocery stores and those restaurants that were able to continue operating.

As restrictions were loosened stores were permitted to accommodate more customers, and restaurants were permitted to utilize outdoor dining and limited indoor dinning.  However, there was still a backlog and delay in the supply chain, requiring grocery stores and restaurants to continue to make necessary accommodations.

It is the expectation of the Debtor that with restrictions being lifted both locally and nationwide, restaurant operations should increase providing the Debtor with disposable income to dedicate to the proposed Chapter 11 Plan.

**E.      Significant Events During the Bankruptcy**

**1.      Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred during this case:

The Debtor filed a voluntary petition on December 11, 2020.  The Debtor's schedules and related documents were filed on December 31, 2020.  The section 341 meeting of creditors was held on or about January 7, 2021.

The Court has approved the employment of the following professional:  Bielli & Klauder, LLC as attorneys for the Debtor on January 5, 2021.

Currently, there are no adversary proceedings or motion pending.

**2.      Other Legal Proceedings**

In addition to any proceedings discussed above, the Debtor was involved in the following non-bankruptcy legal proceedings:

*Old Tees Inc. v. Pranav Desai, Green Turtle, Green Turtle, et al.*, assigned case number 202012817, in the Civil Judgment Court of Common Pleas, Montgomery County, Pennsylvania; *Berkshire Bank v. Pranav Desai and Rajan Mahadevia*, J/S/A, L-2685-19, Superior Court of New Jersey, Law Division – Burlington County, New Jersey.  The Superior Court of New Jersey entered Summary Judgment in favor of the Plaintiff on its claims, on May 27, 2020.

**3.      Actual and Projected Recovery of Preferential or Fraudulent Transfers**

The Debtor does not estimate that there will be any recovery of fraudulent and preferential transfers but reserves the right to assert such claims as they may be discovery in the course of the bankruptcy case.

**4.    Procedures Implemented to Resolve Financial Problems**

In an effort to remedy the problems that led to the bankruptcy, the Debtor has been

working with the managers and operators of the business that the Debtor has invested in. The

Debtor has been monitoring the restrictions as they are removed and has provided consulting and

advice to these businesses as they are able to reopen and return to full capacity operations.

**5.    Current and Historical Financial Conditions**

Attached hereto as **EXHIBIT B** is the most recent Monthly Operating Report ("MOR")

filed by the Debtor.  The Debtor is current on the mortgage on his primary residence at 10

Orchard Grove, Monroe Township, NJ (the "Primary Residence").

The Debtor is in the process of or has voluntarily surrendered the 2019 GMC vehicle to

the Debtor's secured creditor Pentagon Federal Credit Union, which will reduce his monthly

expenses.

**III.**

**SUMMARY OF THE PLAN OF REORGANIZATION**

**A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan**

The Plan classifies claims and interests in various classes. The Plan states whether each

class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class

will receive.

**B.    Unclassified Claims**

Certain types of claims are not placed into voting classes. They are not considered

impaired, and they do not vote on the Plan because they are automatically entitled to specific

treatment provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the

following claims in a class:

8

## 1.    Administrative Expenses and Fees

Administrative expenses are claims for fees, costs, or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 507(a)(1), including all professional compensation requests pursuant to Sections 330 and 331 of the Code. The Code requires that all administrative expenses including fees payable to the Bankruptcy Court and the Office of the United States Trustee which were incurred during the pendency of the case must be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's unpaid administrative fees and expenses ("Compensation"), an estimate of future professional fees and other administrative claims and fees and their treatment under the Plan:

| <u>NAME</u> | <u>AMOUNT ESTIMATED</u> | <u>TREATMENT</u> | <u>TYPE OF CLAIM</u> |
|---|---|---|---|
| Bielli & Klauder, LLC | $20,000.00 | To be paid quarterly, from the Funding Sources. | Counsel to the Debtor |
| Quarterly U.S. Trustee Fees | $350.00 | Paid in full on Effective Date | |
| | **TOTAL: $20,350.00** | | |

**<u>Court Approval of Professional Compensation Required</u>:**

Pursuant to the Bankruptcy Code, the Court must rule on all professional compensation and expenses listed in this chart before the compensation and expenses will be owed. The professional in question must file and serve a properly noticed fee application for compensation and reimbursement of expenses and the Court must rule on the application. Only the amount of

compensation and reimbursement of expenses allowed by the Court will be owed and required to be paid under this Plan as an administrative claim.

Each professional person who asserts a further administrative claim that accrues before the confirmation date shall file with the Bankruptcy Court, and serve on all parties required to receive notice, an application for compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date of the Plan. Failure to file such an application timely shall result in the professional person's claim being forever barred and discharged. Each and every other person asserting an administrative claim shall be entitled to file a motion for allowance of the asserted administrative claim within ninety (90) days of the Effective Date of the Plan, or such administrative claim shall be deemed forever barred and discharged. No motion or application is required to fix the fees payable to the Clerk's Office or Office of the United States Trustee. Such fees are determined by statute.

As indicated above, the Debtor will need to pay an estimated $20,350.00 worth of administrative claims and fees on or after the Effective Date of the Plan. Bielli & Klauder, LLC has agreed to be paid after the Effective Date.

## 2.    Priority Tax Claims

Priority tax claims are certain unsecured claims, employment and other taxes described by Section 507(a)(8) of the Code. The Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments [with interest as determined by application non-bankruptcy law] over a period not exceeding five (5) years from the Petition Date.

Pursuant to 26 U.S.C. § 1398, the Debtor will elect to close his 2020 tax year at the end of September or early October.  The Internal Revenue Service, or the Debtor, may file a post

confirmation proof of claim for any pre-Petition amounts attributable to the 2020 tax year. Any

Allowed amount in such proof of claim will be treated pursuant to the Plan.

The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their

treatment under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| Income Taxes owed to State of New Jersey, 2014 tax year | $1,613.89 | Paid quarterly with interest at 7.75% or the interest rate in effect at the time of Confirmation, from the Funding Sources. This Claim will be paid within 5 years of the Petition Date.  Any state tax refunds that become available during the Plan will first be used to offset pre-Petition federal tax liability. |

## C.    Classified Claims and Interests

### 1.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following chart

lists all classes of creditors containing the holders of the Debtor's secured pre-Petition claims and

their treatment under this Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| **Class 1 Allowed Secured Claim of PNC Bank, N.A.** | Class 1 consists of the Allowed Secured Claim of PNC Bank, N.A., based upon the Loan Documents attached to Proof of Claim #7, to the extent allowed. The Claim is secured by a first-position lien on the Debtor's residence. The Claim is $230,702.22 pursuant to PNC Bank, N.A.'s Proof of Claim. | NO | NO | The Debtor will continue to make contract or adequate protection payments on account of this Claim.  The Debtor is current on his obligations to PNC Bank, N.A., and there is no pre-Petition arrearage. |

11

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| **Class 2 Allowed Secured Claim of PNC Bank, N.A.** | Class 2 consists of the Allowed Secured Claim of PNC Bank, N.A., based upon a first lien position for a mortgage on the Debtor's investment property located at 10 Twin Rivers Drive North, Hightstown, NJ 08520. Pursuant to Proof of Claim #8, the Claim is $107,845.41 with no pre-Petition arrears. | NO | NO | The Debtor will continue to make contract or adequate protection payments on account of this Claim.  The Debtor is current on his obligations to PNC Bank, N.A., and there is no pre-petition arrearage. |
| **Class 3 Secured Claim of Centric Bank** | Class 3 consists of the Allowed Claim of Centric Bank. Centric Bank filed Proof of Claim #9 in the amount of $1,548,705.15, Centric bank has a second priority lien on the collateral being the Debtor's residence, as well as all personal property of Turtle Time JRP1 LLC, d/b/a Green Turtle Sports Bar & Grille. | NO | YES | The value of the Debtor's residence that is the collateral for this secured claim is $201,956.33.  The secured portion of Centric Bank's Claim will be paid over a 10-year period from the Funding Sources.<br><br>The balance of this Claim, $1,346,748.82, will be reclassified as a Class 4 Unsecured Claim. |

**2.      Classes of Priority Unsecured Claims**

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: The Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders

may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all classes containing Debtor's 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims and their treatment under this Plan:

No such claims exist.  The Debtor has no unsecured claims entitled to priority.

### 3.    Classes of General Unsecured Claims

General unsecured claims are uncollateralized claims not entitled to priority under Code Section 507(a).

Class 4 consists of undisputed general unsecured creditors, whose Claims are allowed in the amount scheduled pursuant to 11 U.S.C. § 1111, unless a creditor has filed a proof of claim. Between scheduled claims and proofs of claims, Class 4 currently consists of claims totaling $3,346,735.57. The following chart identifies this Plan's treatment of the class containing all of Debtors' general unsecured claims:

| CLASS # | DESCRIPTION | IMPAIRED | TREATMENT |
|---|---|---|---|
| Class 4 | General Unsecured Claims <br> • Total approximate amount of claims = $3,346,735.57 | Y | Pro rata payment from the disposable income remaining after distributions to Classes 1-3, to be paid in monthly installments over thirty-six (36) months. |

### 4.    Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the debtor. If the debtor is a corporation, entities holding preferred or common stock in the debtor are interest holders. If the debtor is a partnership, the interest holders include both general and limited partners. If the Debtor is an individual, the Debtor is the interest holder.  As an individual

13

Debtor, no one holds an interest in the Debtor.  However, individual debtors must comply with

the Code provisions related to retention of their nonexempt property.

The value of the retained interest in non-exempt estate property is $4,708.  The Debtor

will make a New Value Contribution worth $7,092.00 to the Bankruptcy Estate of the Debtor as

a contribution of money or money's worth, of reasonably equivalent value to the retained

interest, that is necessary for the consummation of the Plan. The following chart identifies the

Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| Class 5 | The Debtor's retained interest in non-exempt estate property. This interest is the non-exempt, realizable equity in the Debtor's assets totaling $4,708. | YES | The Debtor will retain all of his interests in non-exempt estate property on account of the New Value Contribution. |

**D.     Means of Effectuating the Plan**

**1.     New Value Contribution**

a.     The realizable equity in the Primary Residence is the value of the Primary Residence,

minus encumbrances, exemptions, and costs of sale.  The Primary Residence is co-owned with

the Debtor's wife and mother.  That equity is calculated as follows:

| | |
|---|---|
| Primary Residence fair market value: | $  673,188. |
| Closing costs and 10% commissions: | $    67,318. |
| Debtor's ½ interest in the property: | $  201,956. |
| PNC Mortgage: | $  232,172. |
| Centric Bank Mortgage: | $1,516,913. |
| Debtor's § 522(d)(1) exemption: | $           1. |
| Net realized equity: | $           1. |

b.          The realizable equity in the Rental Property is the value of the Rental Property,

minus encumbrances, exemptions, and costs of sale.  Rental Property is co-owned with the

Debtor's mother.  That equity is calculated as follows:

| | |
|---|---|
| Rental Property fair market value: | $ 139,999. |
| PNC Mortgage: | $ 107,859. |
| Closing costs and 10% commissions: | $  13,999. |
| Co-owners ¾ interest | $  13,605. |
| Debtor's ¼ interest in the property: | $   4,535. |
| Debtor's § 522(d)(5) exemption: | $   4,535. |
| Net equity: | $      0. |

c.          The realizable equity in the 2011 Honda Odyssey is the value of the vehicle,

exemptions, and costs associated with the sale.  That equity is calculated as follows:

| | |
|---|---|
| 2011 Honda Odyssey: | $   4,543. |
| Debtor's Exemption | $   4,000. |
| Net Equity | $     543. |

d.          The realizable equity in the 2012 Ford Fusion is the value of the vehicle and costs

associated with the sale.  That equity is calculated as follows:

| | |
|---|---|
| 2012 Ford Fusion | $   3,593. |
| Net Equity | $   3,593. |

e.          The realizable equity in Frodoe, LLC is the value, exemption, and costs

associated with the sale.  That equity is calculated as follows:

| | |
|---|---|
| Frodoe, LLC | $    600. |
| Debtor's Exemption | $    581. |
| Net Equity | $     18. |

**2.      Net realizable equity: $4,708.**

The Bankruptcy Code requires the Debtor to either sell his non-exempt assets and

distribute the non-exempt equity to creditors or obtain a contribution of new value equivalent to

15

the value of the retained non-exempt equity.  The Debtor will contribute new value equivalent to the non-exempt equity in the Primary Residence and Investment Property.

> **3.** **Completion Amount**

In order to confirm an individual chapter 11 plan of reorganization, the Plan must:

a.        Meet the Best Interest of Creditors test.  The liquidation analysis showing the Plan is in the best interest of creditors is found in Part IV.B, below.  This liquidation analysis shows that in a liquidation, general unsecured creditors would receive no payment at all.

b.        Meet the Disposable Income Test: Either pay in full all general unsecured claims of objecting creditors or distribute an amount equivalent to the Debtor's projected disposable income pursuant to 11 U.S.C.§ 1325(b)(2) for the period of the plan.  11 U.S.C. § 1129(a)(15). A Projected Disposable Income Report for the Plan period is attached as **EXHIBIT C**.  The total projected disposable income is the sum of the "Net excess/(deficit) available for claims" in Exhibit C, which totals $7,092.00.

c.        Obey the Absolute Priority Rule or the New Value Exception: Either pay in full all unsecured creditor classes or make a contribution of new value equivalent to the value of non-exempt estate property under 11 U.S.C. § 541. 11 U.S.C. § 1129(b)(2)(B).  The value of non-exempt estate property retained by the Debtor is $4,708.  The Debtor will retain this interest on account of the New Value Contribution made by the Debtor.

This Plan will pay the lowest amount that meets all these requirements, defined as the "Completion Amount."  The Completion Amount will be the amount that passes the Disposable Income Test unless valuation of the Primary Residence requires a New Value Contribution greater than the total disposable income over 5 years.

Because the Plan's Completion Amount will be determined by the Disposable Income

Test, the Plan will be completed within five (5) years of Confirmation, or sooner if Funding

Sources aside from the Debtor's disposable income become available.  After the Debtor has

distributed funds pursuant to the Plan equaling the Completion Amount, the Debtor may, within

120 days, contribute $4,708 to effectuate the New Value Buyout.  These funds will be distributed

pursuant to the Plan.

### 4.      Funding for the Plan

The Plan will be funded by a waterfall mechanism. Numerous funding sources will be

applied to the Classes in the order laid out in the Plan.  Funds will be disbursed to each Class

pursuant to its treatment in the Plan, in the order laid out in the Plan.  Upon full payment of a

Class, pursuant to the Plan, the next class in order will begin to receive funds.  Funding sources

(the "Funding Sources") will be paid out pursuant to the Plan quarterly, as they become available

for disbursement in a particular quarter, until the total amount disbursed under the Plan reaches

the Completion Amount:

a.      First, any federal or state tax refund for tax years 2020 through 2026 obtained by

the filing of a tax return or amendment of a filed return.  Any tax refunds that become available

during performance of the Plan will first be used to offset pre-Petition tax liability.

b.      Second, the net proceeds from any litigation.  The Debtor in his sole discretion

may prosecute or settle any and all claims, causes of action, crossclaims and counterclaims of

any kind or nature whatsoever, which the Debtor may possess against third person, including,

without limitation, Bankruptcy Code created causes of action.  Any recovery on account of the

successful prosecution, or settlement, of any such claims against a third person or Bankruptcy

Claims shall be used to fund obligations under the Plan.  Administrative expenses may be paid,

17

with court approval, from the proceeds of any such litigation taken on a contingency basis or by substitute contingency counsel, reducing the net proceeds.

     c.     Third, any funds available to the Bankruptcy Estate pursuant to the New Value Contribution or New Value Buyback.

     d.     Fourth, any Disposable Income of the Debtor, paid monthly.

     **5.**     **Illustration of Application of Funding Sources**

This is an example for illustrative purposes only.  The actual disbursements under the Plan may differ as various Funding Sources become available at different times.

     a.     The Plan obligates the Debtor to make quarterly payments of all Funding Sources that become available for disbursement during that quarter, until the amount distributed through the Plan reaches the Completion Amount.

     b.     In a hypothetical first quarter after the Effective Date of the Plan, the Debtor's monthly disposable income is projected to be approximately $591.

     **6.**     **Post-confirmation Management**

The Reorganized Debtor shall act as the Manager for his own affairs post-confirmation. The Reorganized Debtor shall not be compensated for his services as a manager.

     **7.**     **Disbursing Agent**

Pranav Desai shall act as the Debtor's disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall not be compensated, or bonded.

**E.**     **Other Provisions of the Plan**

1.      **Executory Contracts and Unexpired Leases**

The Plan provides that all Executory Contracts and Unexpired Leases, except for those specifically assumed by the Debtor in writing or previously assumed by Court Order, shall be deemed rejected. The Debtor will assume the two (2) franchise agreements at confirmation and reserves the right to determine by the Confirmation Date which other contracts, if any, he intends to assume.  All proofs of claim with respect to claims arising from said rejection must be filed with the Bankruptcy Court within the earlier of (i) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejection or (ii) thirty (30) days after the Confirmation Date. Any such claims, proofs of which are not filed timely, will be barred forever from assertion.

2.      **Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission approval of his rates.

3.      **Retention of Jurisdiction**

The Bankruptcy Court will retain jurisdiction as provided in Section III(c) of the Plan.

4.      **Procedures for Resolving Contested Claims**

The Debtor and/or the Disbursing Agent shall have sixty (60) days subsequent to confirmation to object to the allowance of claims.  The Proponent has reviewed the claims that have been filed. The Proponent may object or cause the Debtor and/or Disbursing Agent to object to claims in classes: 3 and 4.

5.      **Effective Date**

**The Plan will become effective on the Effective Date which is the date on which the order of confirmation becomes final.**

**6.      Modification**

The Plan Proponent may alter, amend, or modify the Plan at any time prior to the

Confirmation Date and thereafter as provided in Section 1127(b) of the Bankruptcy Code.

**F.      Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN

MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN

ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible

tax consequences are intended solely for the purpose of alerting readers to possible tax issues this

Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax

consequences contained below are the only tax consequences of the Plan because the Tax Code

embodies many complicated rules which make it difficult to state completely and accurately all

the tax implications of any action.

The following are the tax consequences that the Plan will have on the Debtor's tax

liability: The Debtor does not expect any tax liability in connection with the Plan.

**G.      Risk Factors**

The following discussion is intended to be a non-exclusive summary of certain risks

attendant upon the consummation of the Plan. You are encouraged to supplement this summary

with your own analysis and evaluation of the Plan and Disclosure Statement, in their entirety,

and in consultation with your own advisors. Based on the analysis of the risks summarized

below, the Plan Proponent believes that the Plan is viable and will meet all requirements of

confirmation:  However, the Debtor could be unable to obtain tax refunds, have no causes to

litigation, and may not opt to make the New Value Buyout, in which case, no proceeds from that

source would become available to unsecured creditors.

## IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN
SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON
CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following
discussion is intended solely for the purpose of alerting readers about basic confirmation issues,
which they may wish to consider, as well as certain deadlines for filing claims. The proponent
CANNOT and DOES NOT represent that the discussion contained below is a complete summary
of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the
requirements include that the Plan must be proposed in good faith, that creditors or interest
holders have accepted the Plan, that the Plan pays creditors at least as much as creditors would
receive in a Chapter 7 liquidation, and that the Plan is feasible. These requirements are not the
only requirements for confirmation.

### A.    Who May Vote or Object

#### 1.    Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below
not everyone is entitled to vote to accept or reject the Plan.

#### 2.    Who May vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or
interest holder has a claim that is both (1) allowed or allowed for voting purposes and (2)
classified in an impaired class.

21

### a.    What is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

## THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS <u>FEBRUARY 19, 2021.</u>

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

### b.    What is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of their claim plus interest.

In this case, the Proponent believes that Classes 3, and 4 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or

unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.      Who is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.      Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.      Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section (IV.A.8.).

23

### 6. Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half ($^1/_2$) in number and at least two-thirds ($^2/_3$) in dollar amount of the allowed claims that actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds ($^2/_3$) in amount of the allowed interest-holders of such class which actually voted, voted to accept the Plan.

### 7. Treatment of Non-accepting Classes

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Code. The process by which non-accepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown". The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8. Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The party proposing this Plan asks the Court to confirm this Plan by cramdown on impaired classes if any of these classes do not vote to accept the Plan.

### B. Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder

24

would receive or retain if the Debtors' assets were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here because each creditor is receiving at least as much as they would receive if the Debtor's assets were simply liquidated.

Below is a chart showing the liquidation value of the Debtor's assets.  Because of the large amount of Priority debt, general unsecured creditors would receive nothing in a liquidation.  In the Plan, general unsecured creditors may receive an estimated .0021% to .003% payment if the Debtor elects to make the New Value Buyback.  Therefore, creditors are receiving a better distribution than they would have received in a Chapter 7 liquidation.

| **Assets** | | |
|---|---|---|
| | Primary Residence – 10 Orchard Grove | $673,188.00 |
| | Minus: PNC 1st Mortgage | ($232,172.00) |
| | Less: Commissions | ($67,318.00) |
| | Less: Centric portion of 2nd mortgage | ($373,698.00) |
| | Less: Debtor's Exemption | ($1.00) |
| | **Primary Residence Net Equity** | **$0** |
| | | |
| | Rental Property – 10 Twin Rivers Drive | $139,999.00 |

|  |  |  |
|---|---|---|
|  | Minus: 1st Mortgage | ($107,899.00) |
|  | Less: Commissions | ($13,999.00) |
|  | Less: ¾ ownership to Debtor's mother | ($13,575.75) |
|  | Less: Debtor's Exemption | ($4,535.25) |
|  | **Rental Property Net Equity** | **$0** |
|  |  |  |
|  | 2011 Honda Odyssey | $4,543.00 |
|  | Less: Debtor's Exemption | ($4,000.00) |
|  | **Net Equity** | **$543.00** |
|  |  |  |
|  | 2012 Ford Fusion | $3,593.00 |
|  | **Net Equity** | **$3,593.00** |
|  |  |  |
|  | Frodoe, LLC | $600.00 |
|  | Less: Debtor's Exemption | ($581.23) |
|  | **Net Equity** | **$18.77** |
|  |  |  |
|  | **Total Equity** | **$ 4,708.00** |
|  |  |  |
| **Liabilities** |  |  |
|  | Priority Claims: | $1,613.00 |
|  | Chapter 11 admin. Expenses | $ 20,350.00 |
|  | Other priority claims | $0 |
|  | Total priority claims | $21,963.00 |
|  |  |  |
|  | Amount available for unsecured claims: | **$0** |
|  | (total assets minus priority claims)[1] |  |
|  |  |  |
|  | Total general unsecured claims | $3,346,745.57 |
|  |  |  |
|  |  |  |
| **Chapter 7 Analysis:** |  |  |
|  |  |  |
|  | Total Assets | $4,708.00 |
|  | Less Trustee fees and commissions | $4,708.00 |
|  | Estimated dividend in Chapter 7:   0% | **$0** |

**C.      Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as expenses which must be paid on the effective date are minimal: Trustee fees and court costs which must be paid through the plan total less than $1,000.00.  The Debtor has sufficient cash on hand to pay this amount on the effective date.

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.  As projected in Exhibit C, the Debtor anticipates his disposable income will remain the same and possibly grow over the Plan period, allowing the Debtor to attain payment of the Completion Amount by various combination of the Funding Sources, as they become available.

The Plan Proponent contends that Debtor's plan is feasible in light of the financial records maintained by the Debtor prior to and during the pendency of the bankruptcy case. Accordingly, the Plan Proponent believes, on the basis of the foregoing, that the Plan is feasible.

**V.**

**EFFECT OF CONFIRMATION OF PLAN**

27

## A.    Discharge

The Plan provides that upon completion of all payments under the Plan, the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141. However, any liability imposed by the Plan will <u>not</u> be discharged. If Confirmation of the Plan does not occur or if, after Confirmation occurs, the Debtor elects to terminate the Plan, the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or his estate or any other persons, or to prejudice in any manner the rights of the Debtor or his estate or any person in any further proceeding involving the Debtor or his estate. The provisions of the Plan shall be binding upon Debtor, all Creditors, and all Equity Interest Holders, regardless of whether such Claims or Equity Interest holders are impaired or whether such parties accept the Plan, upon Confirmation thereof.

## B.    Revesting of Property in the Debtor

Except as provided in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.  In accordance with Section 1123(b) of the Bankruptcy Code, each Debtor or Reorganized Debtor shall retain all of their respective Litigation Rights that such Debtor or Reorganized Debtor may hold against any Person and may enforce, sue on, settle, or compromise all such Litigation Rights, or may decline to do any of the foregoing with respect to any such Litigation Rights.

## C.    Modification of Plan

The Proponent may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan if Proponent modifies the plan before confirmation.

The Proponent may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated, (2) no order granting the Debtor a discharge pursuant to the Plan has been entered <u>and</u> (3) the Court authorizes the proposed modification after notice and a hearing.  Proponent further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

**D.      Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Section 1112(b). If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, except property included in the Chapter 11 estate under § 1115, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

Dated:  July 23, 2021                              By:  ___/s/  Pranav Desai

29